CLARKE MILLER et ux., appellees, v. HOWARD W. GUENTHER, appellant.

No. 49538.

(Reported in 93 N.W.2d 122)

Valentine & Greenleaf and Meredith R. Griffing, all of Centerville, for appellant.

Donald W. Harris, of Bloomfield, for appellees.

BLISS, J.—The printed record is long and contains numerous photostats of exhibits, and it is rather difficult to make a concise statement of the facts. The trial court filed an opinion on October 23, 1957, which defendant, on October 31, attacked by motion for a new trial or a rehearing. In response thereto the court, on November 12, 1957, filed a supplement to its earlier opinion, making some corrections and additions, and on November 22, 1957, the judgment for Clarke Miller, hereinabove noted, was rendered and entered. In its opinions the court reviewed the evidence in considerable detail and it is our conclusion from an examination and study of the record that its findings and judgment are entitled to much weight.

In the early part of 1955, Clarke Miller, 42 years old, and his wife, Lillian, were living on his father-in-law's farm in Davis County. His wife was teaching school. He was employed in a branch of the John Deere Implement Company at Ottumwa. He had previously been engaged in farming and was desirous of resuming it. The appellant was operating his own farm in Appanoose County and had another farm of 280 acres in the same vicinity. He and Mr. Miller met and discussed the latter's occupancy of this farm. The appellant was informed that the

Millers could not move onto this farm until Mrs. Miller's term of school ended in May. This was agreeable to Mr. Guenther.

On February 24, 1955, Guenther and Miller signed a printed blank farm lease to the 280 acres. Lillian Miller witnessed their signatures. On the farm was another building and lots occupied by Guenther. The tenure of the land by Clarke Miller was from March 1, 1955, to the last day of February 1956.

A printed clause in the lease provided that Miller was to "pay as rent for the same, in the manner following: That is to say:" (Typed in the blank lines as follows)—"The landlord to furnish 25 head of beef breeding stock and each party to furnish such dairy cattle to be carried half and half. Each party to pay half of all fertilizer, grain seeds, gasoline, twine. Second party [Miller] to furnish all oil, * * * all farm machinery. Each party shall receive one half of all grain and cattle sold, but first party [Guenther] shall be reimbursed by seed harvested for all grass seed which he furnishes. Each party shall keep ownership of breeding stock furnished and in case of sale shall receive the returns from same. First party [Guenther] shall be allowed to determine the use of the land."

Miller had no farm machinery, but he had $3000, and on the back of the lease is a list of implements which he purchased from Guenther at a cost of $1630. Miller also bought and paid for other farm machinery. Miller did not furnish any dairy cattle, as Guenther had all such cattle that they could handle and did not wish to sell any of them to Miller.

This 280-acre farm is referred to in the record as the "Grover Long farm." After the Millers moved to the farm in May of 1955, they papered several rooms in the house, painted the woodwork inside the house and took out a chimney. Miller testified, without denial, that Guenther never furnished as many as 25 head of breeding stock.

Without discussing the matter with the Millers, Guenther sold the Long farm in July 1955. They first learned of the sale from a neighbor. Guenther later told them, but said he would not set them out in the road. Millers lived on the Long farm until December 23, 1955, when they moved because of its sale to what is referred to as the Hinshaw farm, of 355 acres, which Guenther leased to them. The buildings on this place were in

fair shape, except the house, which was run-down and in bad condition on the inside. The Millers painted the inside woodwork, steamed off old wallpaper, papered the rooms, sanded the floors, and helped put in a stool and bathroom. The house had no spouting on it, and with Guenther's help Miller put on new spouting. Miller also testified that he worked on the milk house, dug a pit, put a pump under it, dug a trench and fixed the building so it could be used for a milk house; there were no cow stanchions and they put them in and cemented the floor; Miller transformed a henhouse into a garage and helped put in tile and ran a drain from it making it a permanent improvement; did some plastering on the house, closed some doors, helped to install the bathroom fixtures; Mrs. Miller and her sister painted the back porch; Miller hired outside help in performing some of these services. Miller, with a tractor and plow, did terracing on the building lot on this farm, the reasonable value of which service he estimated to be $100. This terracing was done under some Government plan and Guenther received pay therefor from the Government.

In order to buy cattle and to finance their farming operations on both the Long and Hinshaw farms Miller and Guenther borrowed money from the Centerville National Bank for operating purposes. The first note for the purchase of fifteen head of cattle, referred to as the Walker cattle, was for something over $2200. It was renewed from time to time, and its amount at its last renewal on August 18, 1956, was $2249.45, payable in ninety days. It was signed by the Millers and indorsed by Howard W. Guenther. Payments by both Miller and Guenther are shown on the back of the note, which was stamped "Paid" as of February 4, 1957. Earlier renewals were signed by both Clarke Miller and Howard W. Guenther. In addition to this note, Guenther and Miller on two occasions borrowed $500 on two notes of said amounts to said bank for working capital. The first of these notes is dated April 5, 1956, signed "Guenther and Miller" in typewriting, and the written signature of each of them. The second $500 note to the bank bears the written signature of Clarke Miller and Howard W. Guenther. Both notes are marked "Paid." A chattel mortgage executed and acknowledged by

Clarke Miller and Howard W. Guenther on April 7, 1955, given to the bank to secure the two $500 notes, covering farm machinery, was received in evidence.

Mr. Miller testified: "When we were living there, Mr. Guenther got the milk check and divided and gave us one half of it and he got one half of it. The various expenses we had, like a veterinary, and buying feed, were paid from the joint account we had in the Centerville National Bank and checked out in that way. We got together from time to time to go over expenses * * * and adjusted the accounts up to March 1, 1956."

When Mr. Miller and Mr. Guenther had come to a decision about the occupancy of the 355-acre farm, Guenther evidenced it by the following writing which he wrote in longhand, and signed, as follows:

"Year of 1956 and to Mar 1—1957

"Artical [sic] of agreement for rental of Three hundred and fifty-five acres (355) [of land] Washington Township (Appa) County, Iowa, Howard W. Guenther Owner, Clarke Miller Tenant.

"Both owner and tenant share one half of expenses on all livestock and crops. Tenant to pay half of taxes on livestock. Owner to pay half of hay bailing [baling], pay for spreading of lime. Tenant to furnish all machinery and labor, and repair own machinery. Owner to furnish the livestock and sole owner of all cattle except seven (7) heifers one year old coming two, one Angus bull 1 year old coming two. Owner and tenant one-half share (½) each of the eight (8) head of cattle.

"Tenant Clarke Miller has option to buy said farm (355) Three Hundred Fifty-five acres for price of $20,000 * * * plus improvements that have been added after purchase of farm in year of 1955.

"Howard W. Guenther."

The Millers were on the 355-acre Hinshaw farm when the agreement set out above was made. Millers kept this copy signed by Guenther, and Mrs. Miller made a copy of it which she and her husband signed and gave to Guenther. When the Millers moved to the Hinshaw farm they took with them the 15 head of cattle (Walker cows) and their 14 calves, and 25 Angus calves.

Millers took Guenther's milk cows to the Hinshaw farm and also four dairy heifers which they bought and paid for out of the Miller and Guenther checking account in the Centerville National Bank. At the Hinshaw farm in 1956 they raised 25 Angus calves and calves from the dairy cows which were divided equally between them. For general expense in their farming they borrowed money from the Centerville National Bank on notes signed "Guenther and Miller" and the money was deposited in a "partnership account" in that bank.

About July 1, 1956, Guenther criticized Miller for his way of farming, and cutting the alfalfa at a time when it would not cure, and told him if he "didn't get the ragweed out" he was going to put another renter on the place. On this occasion Guenther threatened to strike Miller with an iron jack handle. It was severely dry in that area in 1956 and their relations with Guenther were such that the Millers in the last of September 1956 went into the business of running a grocery store at Bloomfield, but Miller also attended to his farming and caring for the cattle and still had all of his farm machinery on the farm. There was corn to pick, beans to harvest, and alfalfa to cut. Guenther came over one morning with a tractor, mower and rake and began cutting the alfalfa, and when Miller protested and said he was going to cut and put it up, Guenther became very angry and said Miller broke his contract when he moved off the farm and went into business in Bloomfield. Three or four times a week after Miller went into business at Bloomfield he went to the farm and cut and put up the hay, harvested the soybeans with his combine, and sold them and divided the money equally with Guenther. He picked and stored about 30 acres of corn in separate cribs for each one's share, about 1200 unweighed bushels in all. The 600 bushels of oats had been divided. When Miller next came to the farm the corn had been shelled and moved, together with all the ground corn and ground oats. Miller testified that in the fall of 1956 there were 1200 bales of hay, mostly alfalfa, worth about 80¢ a bale, and that at the time he and Mrs. Miller went to Bloomfield they had no intention of abandoning the farm and told Mr. Guenther so, and they returned two or three times a week, until the cattle were moved by Guenther to his farm without Miller's permis-

sion. There was a general scarcity of feed in that area and Miller told Guenther he wished to sell the cows and calves and that they would bring more in September than after they had been fed through the winter, or just as much. Guenther refused to do this.

In the latter part of September 1956 Guenther had served on the Millers a three-day notice to quit the premises, alleging several grounds all to the effect that he had not used good husbandry in operating the farm. And in the latter part of October 1956 Guenther had another notice served on the Millers terminating the farm lease and demanding possession of the farm. Miller testified that in the latter part of November 1956 there were 33 calves on the farm that had been born while he was there, of a reasonable value of $100 apiece, and there were 13 Walker cows of a reasonable value of $910, and four black heifers that had been carried over from the previous year of a reasonable value of $135 apiece, and the 1200 bales of hay. It was Miller's testimony that on September 1, 1956, the date Mr. Guenther claims his lease was terminated, this property was worth fully as much as it would be in December, and that he had never received any money from Mr. Guenther for any of it, or for any of the labor he had testified to, and that he did not consent that Mr. Guenther could dispose of any of this property. He testified that he did collect milk money with Mr. Guenther's consent that it be used for expense money. He admitted that he owed Guenther $177.21, and that the joint partnership bank account was discontinued about August 1, 1956.

I. In its opinion of October 23, 1957, the District Court stated: "The plaintiff seeks the dissolution of a partnership and an accounting. The defendant in his answer says the relationship was that of landlord and tenant. In their testimony both plaintiff and defendant call it a partnership. The written instruments for both 1955 and 1956 indicate the relationship of landlord and tenant. Both plaintiff and defendant sought to terminate the relationship in August and September 1956. Plaintiff asked defendant to release him and settle up in the latter part of August. Defendant refused and sought to eject plaintiff from the premises in September 1956 and thereafter. * * * Counsel for defendant in their argument say it makes no

difference at this time whether it was a leasehold or a partnership. I will take counsel at their word and not attempt to determine the true character of the relationship. If it was a partnership either party could terminate at any time. If it was a lease neither could terminate it before March 1, 1957, without consent of the other. One thing is certain, both wanted out of it as early as September 1, 1956, though on different terms. I shall treat the contract as terminated on September 1, 1956, for all purposes, excepting the harvesting of the then growing crops and the disposal of property in which both were interested."

The court found the valuation of the property to be $6552.29 and the plaintiffs' share thereof to be $3276.14.

In its supplemental opinion filed November 12, 1957, the court found the plaintiff entitled to $2130.86, for which judgment was entered.

The record is of such length and the items of account involved of such number that it would unduly extend the length of this opinion to discuss them in detail, but from our examination of the record and the arguments of counsel it is our conclusion that the judgment should be and is—Affirmed.

GARFIELD, C. J., and OLIVER, WENNERSTRUM, HAYS, THOMPSON, LARSON, PETERSON, and LINNAN, JJ., concur.